**SO ORDERED.**

**SIGNED this 01 day of October, 2012.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# RALEIGH DIVISION

IN RE:

GRAYDON LEE STEPHENSON AND              CASE NO. 12-00357-8-JRL
LAURA YOUNG STEPHENSON,
                                        CHAPTER 7
    Debtors.

_____

HOLMES P. HARDEN, TRUSTEE,
                                        ADVERSARY PROCEEDING
    Plaintiff,
                                        NO. 12-00065-8-JRL
    v.

DANIEL STEPHENSON,

    Defendant.

## ORDER

This matter came before the court on the motion for summary judgment of Holmes P. Harden ("trustee") on the grounds that there is no genuine issue of material fact and he is entitled summary judgment on his complaint against Daniel Stephenson ("defendant") to avoid a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B). A hearing was held in Raleigh, North Carolina on September 25, 2012.

## BACKGROUND

Graydon Lee Stephenson ("male debtor") and Laura Young Stephenson ("female debtor") (collectively "debtors") filed their voluntary petition for relief under chapter 7 of the Bankruptcy Code on January 16, 2012. In the years prior to the petition date, the debtors, along with Access Enterprises, Inc., were named as defendants in a civil action in Johnston County Superior Court brought by Camp Flintlock, Inc. ("Camp Flintlock") (collectively "Flintlock litigation"). The debtors' schedules, filed along with their petition, list total assets of $148,896.12 and total liabilities of $704,229.31, which includes the $635,685.06 jury award against the debtors in the Flintlock litigation.[1]

The Flintlock litigation arose following the dissolution of Camp Flintlock and the personal relationship between the male debtor and Camp Flintlock's principal.[2] After three years, the Flintlock litigation was set for trial on November 7, 2011. During the interim, the trial court conducted a two-day hearing in May 2011 on motions for discovery sanctions and contempt filed by Camp Flintlock. After the case was called for trial, the trial court granted Camp Flintlock's motions for discovery sanctions and contempt. As a result, the debtors' previously-filed answer and counterclaim were stricken. The trial court submitted issues only relating to damages suffered by Camp Flintlock to the jury, which awarded Camp Flintlock total

---

[1]Excluding the jury award in the Flintlock litigation, the debtors' total liabilities on the petition date would have been $68,544.25.

[2]The parties were engaged in a business relationship whereby the debtors received permission to use the Camp Flintlock name to start a camp in Maryland and were required to pay a commission of $15.00 per camper they enrolled. The complaint in the Flintlock litigation was filed on March 12, 2008, alleging fraud, conversion and unfair and deceptive trade practices. On May 7, 2008, the debtors, as the defendants, filed an answer and several counterclaims against Camp Flintlock.

2

damages in the amount of $635,685.06. The judgment against the debtors was entered by the trial court on July 24, 2012. This chain of events caught the debtors and their counsel in the Flintlock litigation by complete surprise because they believed the likelihood of an adverse verdict was remote and there was a reasonable expectation of recovery on the counterclaims alleged against Camp Flintlock.

The defendant is the debtors' son who is currently pursuing a post-graduate degree at Texas A&M University. On August 25, 2011, during the pendency of the Flintlock litigation, the debtors transferred $13,000.00 to the defendant, which was used as a down-payment on the purchase of a personal residence. The $13,000.00 was obtained from Fort Bragg Federal Credit as an advancement on the debtors' home equity line of credit, which was secured by a mortgage on their residence. This transfer was made during the Flintlock litigation and approximately three months prior to the trial court's ruling on the motions for discovery sanctions and contempt.

The trustee filed the present adversary proceeding on April 19, 2012 against the defendant to avoid the $13,000.00 transfer he received from the debtors' as a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B). Specifically, the trustee contends that the debtors received less than the reasonable equivalent value in exchange for the $13,000.00 they transferred to the defendant and were insolvent at the time of the transfer. On May 5, 2012, the defendant filed his answer denying that the $13,000.00 transfer he received from the debtors was fraudulent. On June 15, 2012, the trustee filed the motion for summary judgment that is now before the court.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), made applicable in bankruptcy by

Bankruptcy Rule 7056, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056. The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In making this determination, conflicts are resolved by viewing all facts and all reasonable inferences in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

## DISCUSSION

Section 548(a)(1)(B) of the Bankruptcy Code provides:

(a) (1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –

    . . . .

    (B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
      (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
      (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
      (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

>  (IV) made such transfer to or for the benefit of an insider, or
> incurred such obligation to or for the benefit of an insider, under
> an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B).  The trustee carries the burden of establishing, by a preponderance of the evidence, each of the elements under § 548.  <u>Ivey v. Crown Mem'l Park, LLC (In re Lee Memory Gardens, Inc.)</u>, Adv. No. 04-9025, 2006 Bankr. LEXIS 664, 2006 WL 996567, at *2 (Bankr. M.D.N.C. Apr. 14, 2006).  For purposes of an individual, the term "insolvent" is defined in the Bankruptcy Code as the "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation . . . ." 11 U.S.C. § 101(32)(A).  The calculation of insolvency excludes exempt property and "property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors[.]" <u>Id.</u>; <u>see</u>  <u>Ivey v. Graham (In re Johnson)</u>, 336 B.R. 712, 716 (Bankr. M.D.N.C. 2006) (emphasizing that "insolvency exists when the sum of all of the debtor's debts is greater than the fair market value of the debtor's assets minus the value of any property fraudulently conveyed by the debtor and minus the fair market value of any property that may be exempted from the property of the estate.").

Courts in the Fourth Circuit apply the "balance sheet test" in determining insolvency for purposes of a fraudulent transfer action under § 548, which "involves the comparing of the fair market  value of the debtor's assets at the time of the transaction with the debtor's liabilities on the same date."  <u>Ruby v. Ryan (In re Ryan)</u>, 472 B.R. 714, 727 (Bankr. E.D. Va. 2012) (citation omitted); <u>see</u> <u>Hyman v. Porter (In re Porter)</u>, 37 B.R. 56, 61-62 (Bankr. E.D. Va.. 1984) (requiring "that all liabilities contingent or otherwise . . . be considered in determining whether a debtor was insolvent at the time of the transfer in question.").  A debtor is considered insolvent

where the sum of its liabilities exceeds the sum of its assets. Whitaker v. Mortg. Miracles, Inc. (In re Summit Place, LLC), 298 B.R. 62, 74 (Bankr. W.D.N.C. 2002) (citation omitted).

In Advanced Telecommunications. Network, Inc. v. Allen (In re Advanced Telecomm. Network, Inc.), the Eleventh Circuit specifically addressed the valuation of contingent liabilities for purposes of determining the solvency of the debtor in a fraudulent transfer action, 490 F.3d 1325, 1335-36 (11th Cir. 2007); see Kane & Kane v. United States, ___ B.R. ___, 2012 Bankr. LEXIS 3223, 2012 WL 2899960, at *7-8 (Bankr. S.D. Fla. 2012) (relying on the formula set forth in Advanced Telecomm. to assign a monetary value to a contingent liability for purposes of determining solvency).  The analysis set forth in Advanced Telecommunication requires the court to value a contingent liability by "calculat[ing] the present value of the liability – the expected cost of the liability times the estimated chance of it ever occurring. Unless either the expected cost or the chances of it occurring are equal to zero (that is, the liability is costless, or the chances of it happening are negligible), the estimated value should be more than zero." Id. at 1335; see In re Xonics Photochemical,Inc., 841 F.2d 198, 200 (7th Cir. 1998) ("[A] contingent liability is not certain--and often is highly unlikely--ever to become an actual liability. To value the contingent liability it is necessary to discount it by the probability that the contingency will occur and the liability will become real.").  The assignment of a value of zero to a contingent liability is "the equivalent of saying that there was no chance whatsoever any liability will be incurred." Advanced Telecomm., 490 F.3d at 1336.

After reviewing the pleadings, affidavits and materials filed with the court and counsels' arguments, the court finds that there is genuine issue of material fact remaining and that the trustee is not entitled to summary judgment on his fraudulent transfer claim.   There is no

6

dispute that the $13,000.00 transferred to the defendant constituted an interest of the debtors in property made within the relevant two-year time period prior to the filing of the bankruptcy petition.  By the defendant's own admission, the debtors received less than reasonably equivalent value in exchange for the transfer.  However, there is a genuine issue of material fact as to whether the debtors were insolvent on the date of the transfer to the defendant or became insolvent as a result of the transfer.

The subsequent $635,685.06 judgment awarded against the debtors in the Flintlock litigation, although a contingent liability, should not be used at face value in calculating the debtors' solvency.  The value of the debtors' obligation arising from the Flintlock litigation, at the time of transfer to the defendant, turns on disputed facts.  Advanced Telecomm., 490 F.3d at 1336.  As the Flintlock litigation remained pending, the debtors viewed the likelihood of an adverse judgment as remote and had a reasonable expectation of recovery on the counterclaims they alleged against Camp Flintlock.  See Covey v. Commercial Nat'l Bank, 960 F.2d 657, 660 (7th Cir. 1992) (assessing the determination of solvency from the debtor's perspective).   On the other hand, their view of the litigation in hindsight was badly mistaken.  Ultimately, how the court values this contingent liability will turn on testimony at trial.

## CONCLUSION

Based on the forgoing, the court finds that there is a genuine issue of material fact and the trustee is not entitled to summary judgment.  Accordingly, the trustee's motion for summary judgment is **DENIED.**

## END OF DOCUMENT